## W. A. STANBROUGH et al. *v.* JAMES H. WILSON.

The Act of Congress of the 29th of May, 1830, declares " all assignments and transfers of rights of preemption in public lands, prior to the issuance of a patent, to be null and void."

An amendment of that Act in 1832 only authorizes such assignment or transfer after certificates of payment or final receipts for the price of such pre-emption, from the land office. Statutes at Large, 4, pp. 423 and 496.—*Held :* That the provisions of these statutes are imperative, and that a probate sale of a pre-emption right, ordered for the purpose of paying debts of the succession, when no payment of the government price of the land had been effected, was the sale of a thing inalienable.

In an action by the widow and heirs of the pre-emptor, against one deriving title from the purchaser at the probate sale.—*Held :* That the land having been paid out of the land office in their name, and a patent issued in their name, they were entitled to recover, but not without reimbursing to the defendant the money which had gone to the benefit of the estate by the supposed sale.

The claim of the defendant for his improvements on the land was also allowed.

APPEAL from the District Court of the Parish of Madison, *Farrar*, J. *Bemiss & Parham*, for plaintiffs. *A. Snyder*, for defendant and appellant.

BUCHANAN, J. *Anson Stanbrough* died in the parish of Concordia, in 1832. Among the property comprised in his inventory, were two preëmption claims to two quarter sections of land, situate on the left bank of Roundaway Bayou, in said parish, appraised at four thousand five hundred dollars. *Anson Stanbrough* left a widow and two minor children ; and his estate was deeply involved in debt.

The widow renounced the community, and, by the advice of a family meeting, convened for that purpose, the property of the succession was ordered to be sold on certain terms of credit, for the purpose of paying the debts. At the public sale ordered by the court, the preëmptions mentioned above were adjudicated to *M. Groves*, on the 25th March, 1833, for the sum of five thousand dollars, by the following description : " The principal establishment being a preëmption claim to three hundred and twenty acres of land with the improvements, situate on the Roundaway Bayou, in this parish, bounded on the upper side by land claimed by *Frederick L. Brown*, and on the lower side by land claimed by *Martin Price*, and described in the U. S. survey thereof as lots No. 40 and 41 in township No. 16 and range 13 east, in the district of lands north of Red River."

The price of adjudication was paid to the administrator of *Anson Stanbrough*, who employed it in paying the debts of the estate. By several mean conveyances the land thus acquired has come into the possession of the present defendant. The survey in evidence shows lot No. 40 to contain 159 70–100 acres, and lot No. 41 to contain 160 acres.

At the time of the sale to *Groves* the government price had not yet been paid for the preëmption claims to the two lots sold ; but, on the 31st July, 1833, lot No. 40 was paid out of the land office at Monroe in the name of the widow and children of *Anson Stanbrough*, and lot No. 41 in that of *Seaborn W. Cameron*. And on the 17th June, 1837, a patent issued for lot No. 40, in the name of the widow and children of *Anson Stanbrough*.

The present suit was brought in April, 1851, by *William Stanbrough* and *Mary Stanbrough*, wife of *Wilkinson*, being the children of *Anson Stanbrough*, mentioned in the entry and patent for lot No. 40. They claim the said lot as owners, together with damages, for its detention and rent, at the rate of five hundred dollars per annum, until they are restored to possession.

Defendant answers, pleading title in himself by virtue of the probate sale of the 25th March, 1833, and, in case it should be adjudged that said sale did not convey a valid title to defendant, he then claims, in the alternative that the price paid by *Groves* be refunded to defendant, as having enured to the benefit of the estate of plaintiff's ancestor. He also claims for the increased value given by him to the land, by clearing and other improvements. Finally, defendant pleads the prescription of ten years.

The death of the plaintiff, *William Stanbrough*, since the institution of the suit is suggested, and, by an amended petition the other plaintiff, *Mrs. Wilkinson*, claims to be the sole heir and representative of said *William*.

The plea of prescription is not noticed in the judgment of the District Court, nor in the printed argument of counsel in this court. We consider it, therefore, as having been abandoned by defendant.

Plaintiffs rest their claim upon that provision of the Act of Congress of the 29th May, 1830, which declares all assignments and transfers of rights of preëmption in public lands, prior to the issuance of a patent, to be null and void ; and upon the amendment of said Act in 1832, which only authorizes such assignment or transfer after certificates of payment or final receipts for the price of such preëmptions from the land office. See Statutes at Large, vol. 4th pp. 421 and 496.

The provisions of these statutes are imperative ; and *Anson Stanbrough's* right of preëmption must be held to have been inalienable, (*hors de commerce,*) at the time of the probate sale of 25th March, 1833, no payment of the government

STANBROUGH
v.
WILSON.

price of the land having been at that time effected. See *Poirrier* v. *White*, 2 An. 934.

It would be, however, contrary to equity that the plaintiffs should evict defendant from this land without reimbursing the money which the estate of their ancestor has benefited by its supposed sale. In *Poirrier* v. *White* the court expressed its regret that the state of -the pleadings would not permit it to decree a restitution of the price in favor of defendant. But in that respect the present case is different. Restitution of the price is distinctly claimed.

The plaintiffs, however, argue that they do not claim in right of their father, but in their own right, and as heirs of their mother, she and they being the persons who paid the land out of the land office, and in whose names the patent issued.

But this argument is unsound. The preëmptor was *Anson Stanbrough*. The entry in the land office at Monroe, and the patent are in the name of the plaintiffs and their mother, but in their quality of widow and children of *Anson Stanbrough*.

Indeed, the whole ground of plaintiff's claim to this land consists in the fact that their ancestor had an inchoate right to the same, which none but himself or his heirs, in case of his death, had the power to perfect into an absolute title.

We are of opinion defendant is entitled under the evidence to receive from plaintiffs three thousand dollars, by way of reimbursement of moneys expended, for the benefit of *Anson Stanbrough's* estate, as follows: The price paid by *Groves* to *Anson Stanbrough's* succession, for lots No. 40 and 41, each containing an equal quantity of land, was five thousand dollars. Half of that sum, therefore, or twenty-five hundred dollars, was the price paid for lot No. 40, which is the subject of this suit. But it is proved that defendant has also had to pay five hundred dollars, to be quieted in the title of lot No. 41, for which the heirs of *Seaborn Cameron* had brought a petitory action against him. As the estate of *Anson Stanbrough* was warrantor of the title of lot No. 41, the plaintiffs, as heirs of *Anson Stanbrough*, are liable for the reimbursement of the five hundred dollars thus paid. As regards improvements upon the land, it is proved that 45 acres were cleared at the time of the probate sale, and, it is admitted, that the whole one hundred and sixty are now cleared and in cultivation. The enhanced value of the land caused by clearing is variously estimated by the witnesses at $25 to $75 per acre. The printed argument of plaintiff's counsel admits it to be $40 per acre. This sum multiplied by 115, the number of acres cleared since the probate sale, gives $4600 for this item, add $1500, cost of buildings, etc., erected before this suit was brought.

Total allowed defendant upon his reconventional demand.......$9100

Against which we allow plaintiffs rent since the institution of this suit, say 7 years at $500 per annum, or.................... 3500

Money balance due defendant...............................$5600

It is, therefore, adjudged and decreed, that the judgment of the District Court be reversed, that plaintiffs recover of defendant lot No. 40 of township No. 16 of range 13 east, with the improvements thereon; but that no writ of possession issue on this judgment untill plaintiffs pay to defendant, or deposit in the hands of the Sheriff of Madison parish, for account of defendant, five thousand six hundred dollars; and it is further decreed, that defendant pay the costs, with the exception of those of appeal which are to be borne by plaintiffs.