No. 8666.

WILLIAMS, PINCKARD & CO. VS. JULIUS ARONI.

A party who contracts with a broker in cotton for future delivery, with special reference to the rules of the Cotton Exchange in New Orleans, agrees thereby that his contract will be governed by such rules, and he will, therefore, be held to comply with the same.

Hence, if his contract is closed out under such rules, by reason of his broker's failure, and before its maturity, he must abide the consequences, and must make good the losses of his broker under the contract.

If the broker settles his liabilities with his creditors at the rate of fifty cents on the dollar, he cannot recover a greater proportion on the account of his principal. He is entitled to recover the amount actually disbursed by him and no more.

APPEAL from the Civil District Court for the Parish of Orleans. *Tissot, J.*

---

*H. L. Dufour* and *J. O. Nixon, Jr.* for Plaintiffs and Appellees:

1. Where a contract is made expressly subject to certain rules of trade, and those rules are known to the person making the contract, that person is responsible for any loss that may ensue in either the carrying out or termination of such contract under such rules.

2. A person who, with knowledge of all the facts, and under no error of law, acquiesces in a settlement, cannot subsequently, when the market has changed, change his position to the prejudice of those with whom he is dealing.

3. Parol evidence is admissible to show a new agreement, or a modification of a previous written agreement. Leeds vs. Louisiana, 17 An. 32; Bouligny vs. Urquhart, 4 La. 30; Gardeur vs. Battaille, 5 An. 597.

4. Where a broker has made a partial settlement and is still liable for the balance, he can recover the whole amount of loss made by the customer. Lacy vs. Hill, L. R. 18 Eq. 182.

*E. M. Hudson* and *W. F. & D. C. Mellen* for Defendant and Appellant:

1. No broker can have a valid claim for his commissions or other compensation, if he has not discharged all the duties of the employment which he has undertaken with proper care,

skill, and fidelity. Parsons on Contracts, 6th ed., No. 100; C. C. 3022, 3024; Sibbold vs. Bethlehem Iron Co., 11 N. Y. Weekly Digest, 445.

2. The margins, deposited by the principal with his broker to secure the latter against loss, are a special trust fund which the principal has the right to have applied in payment and satisfaction of the contracts made in his behalf by the broker. 10 Bosworth, N. Y. S. C. 356.

3. The sole ground on which a broker can recover from his principal, for moneys expended or losses incurred, is that the principal is bound to indemnify his broker for monies paid out or liabilities incurred at the request, express or implied, of the principal. It is immaterial whether the broker voluntarily converts his principal's property to his own use, by wrongfully closing out his contracts, or whether, from no fault of the principal, but solely from his own insolvency and inability to carry out his undertaking, the principal's contracts are closed out under the rules of the brokers' exchange. Duncan vs. Hill, L. R. 8 Ex., pp. 247, 248.

4. Where the agent, as in this case, is subjected to loss, not by reason of his having entered into the contracts in behalf of his principal, but by reason of a default of his own—that is to say, by reason of his insolvency, brought on by want of means to meet his other primary obligations—it cannot be said that he has suffered loss by reason of his contracts in behalf of his principal; and consequently there is no promise which can be implied on the part of his principal to indemnify him; and no express provision to this effect is is shown; Young vs. Cole, 3 Bing. N. C. 724; Child vs. Morley, 8 T. R. 610.

5. The broker's insolvency, by defeating the undertaking entered into on behalf of his principal, operates an entire failure of consideration on his part, thereby entitling the principal to recover back all funds furnished as margins to protect his contracts, and defeating all claim to compensation on behalf of the broker. Ibid.

6. Rules among brokers, so far as they relate to the time and mode of payment, the time and mode of delivery, the various allowances to be made, and all·such matters as arise upon the contract made in the market, are valid, and their principals would be bound by the usage; but so far as they seek to change the nature or intrinsic character of the contracts, or are against law, they are void, and cannot be permitted to affect the rights of the principals. Robinson vs. Mollett, L. R., vii. E. & I. App. pp. 818, 819.

7. A visiting member of the New Orleans Cotton Exchange is subject to the rules of order of the Exchange, but is not, by reason of his being a visiting member, bound by rule 28 of the Exchange. Rule 28 is intended to apply to active members of the Exchange, in reference to their contracts with each other; and can have no effect on contracts which such members, as brokers or agents, may have with their principals. It cannot be permitted to override the law governing the relations between principals and agents. Ibid.

8. An agent cannot, in a suit against his principal for moneys alleged to have been paid out by him, for account of his principal, under any circumstances, recover more than the amount actually paid out with interest.

The opinion of the Court was delivered by

Poché, J. Plaintiffs, who were brokers in cotton for future delivery, were employed as such by defendant to purchase cotton for him for delivery in April, 1882.

Conforming to their principal's instructions, they had made for him, and held a contract of purchase of eight hundred bales for the April delivery, when, on the 13th of February, they failed in business, and suspended.

Under the rules of the Cotton Exchange, which control and regulate

such transactions, all their contracts in the Exchange were closed out, and their notice of suspension having been posted up in the Exchange after 2 o'clock P. M., their contracts were required to be settled on the average quotation of prices of the next day: the 14th of February, 1882.

On that settlement it was ascertained that the losses sustained by plaintiffs, on account of their .cotton transactions as defendant's brokers, amounted to $3,868.93.

In answer to sundry calls made on him by his agents, to cover margins of probable losses occasioned by the purchase as stated above, the defendant had deposited with his said brokers the aggregate amount of $2,435.62.

Allowing him credit for such deposits, plaintiffs have brought this suit for the recovery of the sum disbursed by them, as above stated, which, including other matters to the credit and debit of the account, such as a commission of one. hundred dollars, etc., they foot up at the sum of $1,432.94, for which they obtained judgment in the lower court. Defendant filed a general denial, followed by the special defence that plaintiffs had closed out his contract without his authority or instructions, and through no fault of his, by which course they had forfeited all rights against him under the contract, and he claimed in reconvention the sum of $2,435.62, which he had deposited with them as above stated.

Further defending, he averred. that plaintiffs had settled all their liabilities under the contracts closed out under the rules of the Exchange, at fifty per cent. of the amounts due, and that, in consequence thereof, the only sums which they had disbursed for his account amounted to $1,934.46, leaving them his debtors for the difference between said sum and the amount of his deposits for margins.

Both parties fully and unequivocally recognize the legality and binding effect of contracts for the purchase and sale of commodities for future delivery. Hence, the question of the legality or morality of such contracts is entirely eliminated from the consideration of this cause.

Defendant's first or main proposition is, that plaintiffs having closed out his contract without his authority or instructions, and contrary to the terms of the undertaking, they are not only debarred from the right of recovering any losses resulting therefrom, but that they have thereby incurred the liability of reimbursing to their principal all the losses caused by their wrongful act.

It is not denied that the plaintiffs' contracts were correctly and legally closed out under the rules of the Exchange, but defendant resists application of these rules to his contract with his brokers.

On this point the record shows that, under his own signature in his contract with plaintiffs, the defendant agreed to be controlled by the rules of the Exchange, and it also appears that he was a visiting member of the Exchange, and had been the attorney of several committees of that corporation. Hence, the conclusion that he was familiar with the rules of the Exchange, and that he had full and intelligent knowledge of rule 28 of the Association on the subject of *failures*. In point of fact, he acknowledges that he was aware of the rule.

This is the rule which provides for the closing out and settlement of all the contracts carried by any member who gives the required notice of his inability to meet his obligations with other members at maturity. That, as well as all the other rules of the Exchange, therefore, became a part of the contract of defendant with his brokers, just as though they had been incorporated in the contract.

In thus employing these agents defendant, therefore, incurred the risk of their failure and of the prescribed consequences thereof, touching his contract with them. True, he omitted or committed no act which contributed in the least to the disaster; but under the circumstances of his contract, he occupies no better position towards his agents than would otherwise be the case, and they are not more liable in responsibility towards him for the unforeseen calamity than they would be for the consequences of a falling market. The failure was not the fault of the defendant, and no more can it be attributed to the negligence or want of skill of the plaintiffs.

Their misfortune was to carry too many contracts of purchase in a falling market, owing to the erroneous judgment of other principals who, like the defendant, had calculated on a different state of things.

In this aspect of the case, the brokers were situated precisely like the agent in the case of Lacey vs. Hill, L. R. Eq. vol. 18, p. 182, who could not foresee the default of their principal, in the face of his positive promise to the contrary.

The two authorities mainly relied upon by defendant, in support of his theory, deal with principals who were shown to be ignorant of the custom of trade invoked against them, and it was therefore held, that they were not bound thereby.

In one of those cases, it was found that the custom or rule invoked was wholly unreasonable. We therefore conclude, that these decisions cannot control the instant case. Robinson vs. Mollett, L. R. 7 Eng. and Irish Appeals, 802; Duncan vs. Hill, L. R. 8 Ex. 242.

As the defendant contracted with plaintiffs with special reference to the rules of the Cotton Exchange, and bound himself to be governed thereby, the question of the reasonable character, the legality or the

binding effect of these rules *per se*, and of their availability on the enforcement of the contract finds no place for discussion in this case and must be eliminated therefrom.

We therefore conclude, that plaintiffs are legally entitled to compensation for the losses sustained by them in the transaction of the business.

This brings us to the consideration of the amount which they may lawfully claim.

By their own judicial admission they show that the actual amount disbursed by them on account of defendant's contract was only fifty per cent. of the amount which they claim, and hence the conclusion that they cannot recover more.

This fact of a settlement at fifty cents on the dollar is further shown by the written agreement of all their creditors to that effect, and by their subsequent receipt of the amount agreed upon.

The effort of plaintiffs to show that they had a verbal agreement with creditors to pay more as they made collections cannot be entertained for a moment, in the face of a settlement which the rules required to be *full*, as a condition precedent to their readmission as members of the Exchange. Good faith and fair dealing operate as a complete estoppel of that pretension.

No more can they succeed in their attempt to show that they had settled at par for six hundred bales of the defendant's contract, by offset with fellow brokers, to whom they had sold cotton, through the process known in the language of the trade as the *ringing out* of contracts.

The very account which they presented to defendant, and on which this suit is based, charges that the loss on the 800 bales was incurred on the 15th of February, 1882, and hence, defendant's liability to them cannot be affected by their previous operations with other brokers, while his contract was in full force and at the very time that a call of eighteen hundred dollars was made on him.

A different ruling would open the door to frequent and great abuse of the confidential relations existing between principal and agent, and would tend to legalize very dangerous practices, easily understood without further explanation.

But above all these considerations, it is clear in law that plaintiffs are absolutely estopped from attempting to prove a claim different from the cause of action set forth in their pleadings.

As the defendant is charged with a loss of $3,868.93, alleged to have been disbursed by his agents, he is legally entitled to ascertain the manner in which that sum was disbursed. Such an examination is of

the very essence of the controversy, and cannot be resisted or evaded by the agent who judicially demands reimbursement for losses alleged to have been sustained by him in the transaction of his principal's business. Plaintiffs' own evidence shows that, on account of the alleged losses sustained in these transactions, they have actually disbursed but fifty cents on the dollar.

They contend, in their brief, that the deposits made by the defendant had been absorbed by being put up as margins, before the 13th of February, the day of their suspension, and that the portion of defendant's liability, which they settled at the rate of 50 per cent., was only the difference between the amount of the deposits and that of the losses. But that argument is not borne out by the record, which is silent on the subject; and the account sued upon leads to a different conclusion.

To the suggestion that the defendant did not call for a detailed account of the disbursement of his funds, we answer that it was incumbent on the plaintiffs to present and prove such an account.

In the absence of such proof, we are bound to conclude with the defendant, that his funds were held by his agents at the time of their failure. The burden of proof was on plaintiffs, and their silence must be construed against them. On such a vital point it will not suffice to invoke the custom of the Exchange, it must be shown that plaintiffs had actually complied with the rule or custom.

In the absence of such proof, we must construe the account literally, and that view justifies the conclusion that the losses on defendant's purchase was settled by plaintiffs at the rate of fifty cents on the dollar. Having disbursed but $1,934.46 for account of their principal, they owe him the difference between that sum and the amount of his deposits.

We are also of opinion that they are entitled to no commission in the premises, for the reason that they did not perform the service which they had undertaken in their contract.

Their obligation was to carry the defendant's contract to April; they closed it with losses in February; and admitting that they yielded to overpowering circumstances, it is nevertheless true that they did not complete the mission which they had undertaken. Parsons on Contracts, 6th Ed., 100.

The judgment of the District Court is therefore reversed, and it is ordered and decreed that there be judgment in favor of the defendant against plaintiffs in the sum of five hundred and one 16–100 dollars ($501.16) and costs in both Courts.

Rehearing refused.