## No. 12,712.

### CHARLES GENELLA VS. P. L. MARTIN VINCENT.

A perfectly correct assessment by no means carries with it as a necessary result the validity of subsequent proceedings made in the enforcement of the tax assessed in the name of the party assessed. Hood vs. City of New Orleans, 49 An. 1461; Hodding vs. City, 48 An. 982; Hoyle vs. Southern Athletic Club, 48 An. 879.

Notice of assessments as having been made is something other than notice of delinquency, and of an intention of selling the property assessed on failure to pay the taxes within a specified time. They are distinct matters touching different steps in the enforcement of taxes.

Article 210 of the Constitution requiring that notice should be given to the tax-payer contemplated that reasonably diligent steps should be taken to make the notice effectual.

Notice of delinquency and notices of a proposed intention to sell the assessed property should the taxes be not paid within a specified time placed in a letter mailed at New Orleans, the place of assessment, and directed to the party assessed as living at New Orleans is insufficient, where the party assessed had been living in Europe and had died there many years before the assessment—when her succession had also been opened in the District Court for Orleans, and her heir had been recognized and ordered to be placed in possession, and when the property had all the time been in possession of a tenant who could have given information of the facts of the case.

Where a defendant in a petitory action is evicted from land which he has purchased at a tax sale he should recover from the owner evicting him, the taxes which he has paid on the land. Walsh vs. Harang, 48 An. 984.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor, J.*

*W. S. Benedict* and *Robert G. Dugué* for Plaintiff, Appellee.

*W. E. Murphy* and *J. Zach Spearing* for Defendant, Appellant.

Argued and submitted March 26, 1898.
Opinion handed down May 2, 1898.

The opinion of the court was delivered by

NICHOLLS, C. J. *In Octobsr, 1889,* the plaintiff in this suit obtained from the Civil District Court a writ directing the sheriff of the parish of Orleans to place him in possession of certain property described in his petition, alleging that he had become the owner of said property from the State of Louisiana; the State itself having acquired the same at a tax sale made in enforcement of delinquent taxes. Before the writ was executed, one Frank Grunow obtained an injunction restraining its execution. In his petition for injunction he attacked the title upon which plaintiff declared. The prayer of his petition was that the sheriff be restrained from proceeding under the writ and from interfering with him in the legal occupancy of the property; that after due proceedings the injunction be perpetuated, and that he be decreed to be the legal occupant and possessor of said property, free from interference on the part of Genella.

The District Court, on the trial, perpetuated the injunction, recognizing and decreeing Grunow to be the legal occupant and possessor of the property free from all interference on the part of the plaintiff. He appealed to the Supreme Court.

The evidence in the cause disclosed the fact that Grunow was in possession of the property as the tenant of one Joseph Jacquier. This court held that the issue between the parties before the court was not the right of ownership but the right of possession of the property; that the value of that right as alleged under the pleadings was not sufficient to give the court appellate jurisdidiction, and it dismissed the appeal.

Plaintiff subsequently brought the present petitory action for the property.

In his petition he averred that he was the owner for having purchased it for two hundred and eighteen dollars cash from the State of Louisiana through C. Harrison Parker, Tax Collector of the First District of New Orleans, by an authentic act duly registered, passed before Posey, notary, on October 25, 1889, in confirmation of a previous adjudication made to him by said tax collector on the eighteenth of the same month in proceedings had under Act No. 80 of 1886. That the property had been previously adjudicated to the State under the provisions of Act No. 96 of 1882 on the 18th of May, 1888, and deeded to it by an authentic act on July 13, duly registered on July 18, 1888. That both of said sales were made to enforce the payment of State taxes which were due on the property for the year 1887 under an assessment in the name of Catherine Neidergang, the former owner, who had purchased it in 1855.

That shortly after she purchased it she married one Joseph M. Jacquier in Switzerland, where she remained continually thereafter until she died in 1874, but that the persons charged with the duty of listing and assessing property for taxation in said city not having been notified and having never heard of said marriage continued thereafter to assess the property in the same name as before, with the knowledge and consent of both the husband and the wife, who paid taxes on the subsequent assessments without demur or compialnt, thus approving them and ratifying them, and after the death of his wife the assessments was continued in the same name, no notice of her death having been given to the assessors.

That Mrs. Jacquier left no ascendants or descendants or collateral

kindred, and the property at her death descended by inheritance to her husband, who assumed and retained full charge and control over it, collected the rents and revenues and paid taxes on the said assessments, thus again approving and ratifying them, but he failed to pay the taxes of 1887 for which the property was sold to the State and to petitioner as stated during the life of said Jacquier and while he was the sole owner thereof. That all of the proceedings leading up to the sale to the State and to petitioner, including the assessment, the adjudication and the sale were regular, legal and proper and conferred a valid title upon the State and upon petitioner. That Jacquier had since died, leaving as his universal legatee one P. L. Martin Vincent, who had caused himself to be recognized by the court and claimed to have been put in possession and to be the owner of the property as such, but that he is not the owner, petitioner having acquired it as above stated before the death of Jacquier, who could not transmit by inheritance or otherwise what he did not have. That in addition to the price which petitioner paid to the State for the property on October 18, 1889, two hundred and eighteen dollars, and to Posey, notary, for the act of sale, copy, etc., sixteen dollars and fifty cents, he had paid taxes upon the property up to and including March, 1895, to an amount of three hundred and twenty-three dollars and eighty cents.

That since the date of his purchase one Grunow, now claiming to be a tenant of Jacquier, under a lease of the property at five dollars per month, remained in possession of it against the will and consent of petitioner, until recently, when the said Martin obtained possession under color of the *ex parte* order of the court recognizing him as universal legatee of Jacquier and had obtained judgment in the Civil District Court against Grunow for six years' rent, say three hundred and sixty dollars, and interest, which petitioner alleged he believed had not yet been paid; that if it had been, Martin owed this rent to petitioner, and if not the judgment against Grunow for the rent should be decreed to belong to petitioner; that Martin resided in Switzerland and was represented in Louisiana by one Francis Louis Fontenot as his agent, duly authorized to stand in judgment for him. He prayed for citation for the ownership and possession of the property and rent at the rate of twenty-five dollars per month from 18th October, 1889, until possession be delivered. Should, however, the court not

recognize him as owner, then and in that contingency he prayed that Martin be condemned to pay him three hundred and twenty-three dollars and eighty cents, with eight per cent. interest per annum on each item thereof from the date of each payment, with twenty per cent. additional, and such further sum as petitioner might pay for taxes with interest before the suit was finally decided, and for general relief.

Defendant, through counsel, excepted that the petition contained inconsistent and contrary demands—plaintiff claiming to be the owner of certain real estate and claiming the purchase price paid for the same and taxes paid by him; that plaintiff could not cumulate in the same suit a real motion for the ownership of real estate and a personal action for the payment of a debt.

He pleaded *res judicata* to the claim for the ownership of the property, urging that that issue had been decided adversely to him in the case entitled *In re* Genella praying for a writ of possession (No. 28,259 of the docket of the Civil District Court), the judgment in which suit had become final.

The District Court overruled the exceptions. Defendant answered, pleading first the general issue. Further answering, he averred that he was the owner of the property, having inherited the same from Joseph M. Jacquier. That the succession of said Jacquier was opened in the Civil District Court, and respondent recognized as heir and put in possession of the same under the mortuary proceedings taken in the matter of said succession. That said order was recorded in the books of conveyance. That the plaintiff had no standing in court or right to question respondent's ownership, it having been decreed in the suit entitled *In re* Genella, claiming possession, that he was not the owner of the property. That he was in no way responsible for any sum which plaintiff may have paid, as he alleged, for the purchase of said property or for the taxes he had paid on the same, the said sale and the assessment of the taxes on the same having been declared to be null and void in the judgment rendered against plaintiff in the said proceeding (No. 28,259 of the Civil District Court), now final.

Defendant filed a supplemental answer in which, after again pleading the general issue, he averred that he was the owner and possessor of certain property which he minutely described.

He denied that the plaintiff had ever purchased said property at

tax sale, or in any other manner; he denied that it was ever assessed for the year for the taxes of which plaintiff claimed it was adjudi-cated to the State, and, in turn, sold to him, or ever adjudicated to the State. He averred that the property which was advertised and adjudicated to the plaintiff was lot No. 26 in said square, and plain-tiff fraudulently had the description in the deed made to him to de-clare the property to be " *Lot B*," although " Lot B " had never been adjudicated to the State, nor advertised, nor sold to plaintiff.

In the event of the court's holding that the tax proceedings were directed against the lot of ground owned by respondent, then and in that contingency he averred that all of said proceedings were abso-lutely null and void, and the said property was never adjudicated to the State—that it had no title itself and could convey none to plain-tiff for the reason among others that there was no assessment of said property sufficient to identify or describe it—that if there was any assessment of the same it was not in the name of the then owner, but in the name of Catherine Neidergang, who had been dead for many years previous to the assessment, whose succession had been opened in the Second District Court for the parish of Orleans, whose name, even if she had been living, was not correctly given, she hav-ing married Joseph M. Jacquier many years previous to said assess-ment. That no notice of said assessment or of the pretended delin-quency of said tax or of the contemplated sale was given to the owner of said property. He denied that he was responsible for the alleged expenditures pretended to have been made by plaintiff for the reason that they are based upon absolutely illegal, null and void assessments, nor is he liable for the amount claimed to have been paid by plaintiff for the purchase price of said property for the rea-son that said amount is far in excess of the price of the pretended adjudication to the State which formed the basis of plaintiff's alleged title, and the same did not enure to the benefit of plaintiff or of his author.

The District Court rendered judgment, decreeing plaintiff to have become the owner of the property in controversy on the 18th of October, 1889, and ordering him to be placed in possession of the same. It reserved to plaintiff the right to sue defendant for rents from the 18th of October, 1889, until the property should be delivered to him.

Defendant appealed.

61

### OPINION.

Plaintiff seeks to be declared the owner and placed in possession of certain property, the ownership of which is claimed by the defendant as the heir of one Joseph M. Jacquier. Jacquier himself, acquired the property as the heir of his wife, Catherine Neidergang, who had purchased it prior to her marriage. After purchasing the property she removed to Switzerland, where she married in 1869 and died in 1874. From 1856 to 1882, the property was assessed in the name of Catherine Neidergang, Neidergrand, Neidegang, Widergrand or Neidergrand, but from 1833 to 1889 in her correct maiden name.

From 1860 to 1871 the property was described on the same rolls as *lot No. 21,* in 1873 as *lot No. 25* and since as *lot No. 26* of square No. 156.

All the taxes up to and including those for the year 1886 appear to have been paid on those assessments.

The taxes for 1887, however, were not paid. On the 18th of May, 1888, the tax collector sold the property to pay them under Act No. No. 96 of 1882 and adjudicated the same to the State.

Subsequently (in October, 1889), the tax collector adjudicated the property to Genella, the plaintiff, under Act No. 80 of 1888.

In the deed to him, the description of the property given in the assessment roll of 1887, and in the advertisement under which the sale was made is ADDED TO by stating that the property conveyed to Genella as Lot No. 26 was the same which Miss Neidergang had bought from Mrs. Keller by act before Cenas, notary, on December 27, 1855, and designated in the plan of one Pilié by the letter "B."

After Genella had obtained a deed for the property he applied to and obtained from the Civil District Court for a writ of possession, but before it was executed he was met by an injunction taken out by one Grunow claiming to occupy the premises as tenant of Jacquier. Grunow, in aid of his possession, attacked the validity of the tax adjudication to the State; also that of the State to Genella. Grunow was quieted in his possession, and Genella appealed. The appeal was dismissed by the Supreme Court upon the ground that the action as brought involved simply the question of possession. as that of title could not be litigated between a tenant and a party claiming rights of ownership adverse to those of the lessor and the

value of the "right of possession" involved was less than that necess ry to give the court jurisdiction. The case is reported in 45th Annual Reports, page 1377 (*In re* Charles Genella praying to be put in possession).

Plaintiff then instituted the present petitory action against defendant claiming ownership of the property as heir of Joseph M. Jacquier, alleging that Jacquier had inherited the same from his wife, Catherine Neidergang.

The first point to which our attention is directed is the exception of *res judicata* urged by the defendant based upon the decision of the District Court perpetuating the injunction which issued on the petition of Grunow. The action of the lower court in overruling this exception was correct. The appeal from the judgment on the injunction was dismissed by us precisely upon the ground that Grunow as tenant was without capacity to stand in judgment upon an issue of ownership, either as plaintiff or defendant.

Our opinion to that effect forms the law of this case. Its effect was to leave the judgment appealed from determinative simply of Grunow's right of possession and to drive Genella under the circumstances to the action now before us—a petitory action against the owner. It is claimed by the defendant that the property in litigation herein was never sold at tax sale; that it was not assessed by proper description; that it should have been described as "*Lot B*" of Pilié's plan, instead of Lot No. 26 of square No. 156, bounded by certain designated streets; that the reference to Pilié's plan and letter "B" of that plan in the deed to Genella was unauthorized and fraudulent; that even if properly described it was improperly assessed in the name of Catherine Neidergang, as she had married Joseph M. Jacquier and had besides been dead for many years before 1887 and her succession had been opened in 1875, and her husband, Jacquier, had been recognized as her usufructuary heir and universal legatee and ordered to be placed in possession of the movable property of her succession described in the inventory thereof taken by Pitot, notary, on the 14th January, 1875.

The plaintiff in his petition in the present suit in giving the description of the property claimed *left out this reference to "Pilié' plan,"* and described it as "A lot of ground with the buildings and improvements, situated in the First District of this city in square bounded by Magazine, Camp, Gaiennie and Erato streets, designated

as lot No. 26 in Square 156" while defendant in his answer "*admitted that he was the owner of the property mentioned in the plaintiff's petition, having inherited the same from the late Joseph M. Jacquier.*" The identity of the property as advertised as Lot No. 26 of square 156 with " Lot B " of Pilié's plan being thus admitted, the mere declaration in the tax deed that such was the fact is an immaterial fact, not affecting the rights of parties.

Plaintiff maintains that the attack made by defendant upon the assessment as having been made in the name of Catherine Neidergang loses its force inasmuch as Jacquier, her heir, had for years recognized the assessment as good and sufficient by paying the taxes charged up against the property under that assessment. He cited in support of this position Lane and Husband vs. Succession of March, 33 An. 554; Carter, Congreve *et al.* vs. City of New Orleans *et al.*, 33 An. 816; Factors and Traders' Insurance Company in Liquidation vs. Mrs. Mary Ann Levy *et als.*, 42 An. 435, and Palmer vs. Board of Assessors, 42 An. 1127.

Defendant, denying this contention, insists that even if it were correct it would avail plaintiff nothing, inasmuch as the sale of the property would be null and void for want of proper notice under the requirements of Art. 210 of the Constitution and Act No. 96 of 1882, to the owner. He cites Villey vs. Jarreau, 33 An. 296; Stafford vs. Twitchell, 33 An. 528; Hayes vs. Viator, 33 An. 1165; Norres vs. Hayes, 44 An. 912; Breaux vs. Negrotto, 43 An. 427; Hoyle vs. Athletic Club, 48 An. 879; Hood vs. City of New Orleans, 49 An. 1461; Lacroix vs. Lumber Company, 49 An. 1445; Hodding vs. The City, 48 An. 982.

This argument was met by the counter claim that a notice (following as to ownership, the name of the person standing on the rolls as such under an assessment recognized as good by the actual owner) directed to the party in whose name the property was assessed, would be sufficient, and in addition to this that the name and residence of the actual owner being unknown to the assessor, a general notice of an intended sale such as was shown to have been given to unknown owners by publication in a newspaper was all that was required in the case to carry title to the purchaser. That Jacquier being a foreigner with no agent or one not known to the assessor, the latter was unable to do more than he did in the way of giving notice.

The tax deed to plaintiff declares "that one of these notices (describing the notice) was duly and legally mailed to the *delinquent taxpayer* hereafter named."

The only taxpayer "thereinafter named" was "Catherine Neidergang." No mention was made of Jacquier or any one else as representing his succession or as being her heir, and no declaration is made as to the point to which the notice was addressed. The mere general statement extracted from the general *proces verbal* of the collector descending to no particulars and intended to take in by sweeping recital every notice which had issued from his office, "that notices had been duly and legally mailed to the delinquent taxpayer thereinafter named, does not carry with it the force and effect claimed for it of causing it to be presumed in each and every individual case where the facts of the particular case are needed to be known that the course pursued by the tax collector, in respect to that case, was precisely that which the law would have required to be followed to give legality to his acts. His announcement that the notices were duly and legally mailed is simply a general legal conclusion of his own as to the validity of his action, and it does not take the place of special recitals which might be needed in some particular instance to make his course thereon conform to what the occasion would legally call for.

It is very evident from the tax deed that the only notice attempted to be given in this case in respect to a sale to be made of the property other than the general notice given through publication in a newspaper was through a letter mailed at New Orleans, addressed to "Catherine Neidergang, New Orleans, La."

With reference to the general notice the deed declared that the tax collector had published once a week for two weeks in a newspaper in the city of New Orleans a notice of an intended sale addressed generally to all known and unknown owners of immovable property in the first or upper district of the city "in which he described (the property) in the said tax rolls."

At the time of the adjudication of the property to the State it was in possession of Grunow as a tenant of Jacquier. It is admitted that Catherine Neidergang, wife of Joseph M. Jacquier, died in Switzerland in 1874; that her succession was opened in the Second District Court for the parish Orleans in July, 1874; that an inventory was made in said succession; that it showed that the inventory owned no other

property here other than " Lot B," which is in controversy in this case, and which was appraised at twenty-five hundred dollars; that in January, 1875, judgment was rendered in the matter of the succession on the petition of Joseph M. Jacquier, recognizing him as the usufructuary heir and universal legatee of his said wife and ordering him to be put in possession of all the immovable property belonging to the succession of his deceased wife as described in the inventory of her succession taken by Pitot, notary, on the 14th of January, 1875, to be by him enjoyed during his lifetime, and also to be by him administered upon in accordance with the terms contained in the last will of his wife.

It was admitted on the argument that Jacquier, the husband, became the heir of his wife under Art. 917 of the Civil Code.

It is under this condition of facts that we are called on to declare whether the tax adjudication to the State divested Jacquier of his ownership of the property.

The first inquiry to be made is whether prior to the sale notice was given to the tax delinquent as required by Act No. 96 of 1882, and Art. 210 of the Constitution, for if it was not, now it becomes unnecessary to discuss other questions, as such prior notice is essential to a valid tax adjudication. A perfectly correct assessment by no means carries with it as a necessary result the vaiidity of the subsequent proceedings made in enforcement of the tax assessed (see Hood vs. The City of New Orleans, 49 An. 1461; Hodding vs. The City, 48 An. 982; Hoyle vs. Southern Athletic Club, 48 An. 879).

Notice of assessments as having been made is something other than notice of delinquency and of an intention of selling the property assessed on failure to pay the taxes within a specified fixed period. They are distinct matters touching different steps in the enforcement of taxes, the latter notice being of much greater importance than the former.

In Hoyle vs. Southern Athletic Club, 48 An. 879, we held that " where property was assessed in the name of ' Estate of J. M. Hoyle,' a notice addressed by the tax collector to the 'Estate of J. M. Hoye,' placed and prepaid in the postoffice is not a compliance by the tax collector with the requirements of law."

That Art. 210 of the Constitution, in requiring that notice should be given to the taxpayer, evidently contemplated that reasonably diligent steps should be taken to make the notice effectual.

Genella vs. Vincent.

The same views were expressed in the Succession of Lacroix vs. Lumber Company, Limited, 49 An. 1445, and Hodding vs. The City, 48 An. 982, and *Walsh vs. Harang, 48 An. 989.*

The facts of this case do not bring it within the exceptional one of Webre vs. Lutcher & Moore, 45 An. 574 (referred to in Russell vs. Lang, 50 An.). The property in this case has been in possession of a tenant from whom the tax collector could have easily obtained the information needed to enable him to perform properly his duty. The succession of Catherine Neidergang had been opened in New Orleans and her husband, Jacquier, had been recognized as her heir and ordered to be put in possession.

We are of the opinion that the adjudication to the State of the property in litigation was fatally defective for want of proper notice to the owners of said property.

The defendant has failed for many years to pay taxes upon it, and has stood by and permitted the plaintiff (as holding title under the adjudication to the State and to himself) to incur all the burdens and responsibilities of ownership which it was properly his own duty to assume and bear. He can not enrich himself at the expense of the plaintiff. We are of the opinion that plaintiff's prayer made to meet the contingency of the court's not recognizing his title to the property set up herein for payments and disbursements made by him, is well founded. Walsh vs. Harang, 48 An. 989.

For the reasons assigned: It is hereby ordered, adjudged and decreed that the judgment of the District Court appealed from be and the same is hereby annulled, avoided and reversed and it is now ordered, adjudged and decreed that the adjudication made of the property in litigation herein to plaintiff and the tax deed held by him under said adjudication and the adjudication of the said property to the State of Louisiana and the tax deed held by the State under said adjudication to it which plaintiff sets up as the basis of his title to said property be and the same are hereby annulled and the evidence of the same be erased from the books of the Conveyance Office of the parish of Orleans.

It is further ordered, adjudged and decreed that plaintiff, Charles Genella, do have judgment against the defendant, P. L. Martin Vincent, for the sum of four hundred and twenty-nine dollars, with legal interest from the date of payment of each item of the account filed by him in evidence and for such other amount for taxes which he

may have paid since the filing of this suit. For the purpose of fixing the date of the respective payments made and the ascertainment of what further sums, if any, may be due to plaintiff for taxes paid by him since the institution of this suit the cause is remanded to the lower court for further proceedings according to law.

BLANCHARD, J., dissenting in separate opinion.