EDMISTON v. TULANE INVESTMENT CO. ET AL.

———

(August 13, 1928. Opinion and Decree.)
(September 4, 1928. Rehearing Refused.)

———

F. Rivers Richardson, of New Orleans, attorney for plaintiff, appellee.

Joseph A. Morales, of New Orleans, attorney for defendants, appellants.

CLAIBORNE, J. This is a suit to annul a tax sale.

The plaintiff alleged that he was the owner of the following described property:

"A lot of ground in the Third District of this city in the square No. 1100 bounded by Andry, Egania, Galvez and Miro Streets designated by the No. 23 and measuring 31 feet front on Andry Street by 122 feet deep."

Being the same property purchased by plaintiff at a sale for a tax due the State for the year 1920, assessed in the name of F. P. Norris, by an act before John P. Sullivan, notary, dated April 20, 1922, Reg. C. O. Bk. 353, p. 13, on April 24, 1922.

That the said Rev. T. P. Norris purchased said lot from the Andry Realty Co. by an act under private signature dated November 10, 1919, Reg. C. O. Bk. 312, p. 159.

That the defendant, the Tulane Investment Company, also claims to have purchased said property at a sale made by the City of New Orleans for the tax of 1921, assessed in the name of Rev. T. P. Norris, by an act before P. D. Olivier, notary, dated July 15, 1922, Reg. C. O. Bk. 350, p. 430, on July 18, 1922.

That the Tulane Investment Company transferred said property to the Galvez Realty Company on January 12, 1923, by act Reg. C. O. Bk. 358, p. 448.

That the act of sale made to the Tulane Investment Company is an absolute nullity "for want of notice to plaintiff, of the proposed tax sale," as plaintiff was the duly registered owner of the property at the time of the city tax sale, and that the sale of said property without notice to plaintiff was an absolute nullity; that plaintiff offered to pay the Tulane Investment Company and the Galvez Realty Company the amount paid by it at the city tax sale with interest and all other taxes paid by it on said property which they refused to accept.

Plaintiff therefore prayed to be recognized as the owner of the above mentioned property, and that the city tax sale to the Tulane Investment Company by act before P. D. Olivier, notary, dated June 15, 1922, and the transfer by the Tulane Investment Company to the Galvez Realty Company, dated January 12, 1923, be declared null and the registry thereof in the conveyance office be cancelled and erased.

Therefore we have before us the plaintiff who has purchased a lot of ground at a sale made for State taxes of 1920 in the name of Rev. F. P. Norris by act dated April 20, 1922, and the defendants the Galvez Realty Company, which acquired from the Tulane Investment Company on January 12, 1922, and the Tulane Investment Company which purchased on June 15, 1922, two months later than the plaintiff, at a sale made by the City of New Orleans for taxes of 1921, and the charge made by the plaintiff that the city tax sale to the Tulane Investment Company is an absolute nullity for want of notice of sale to the plaintiff who was the registered owner since April 12, 1922, prior to and at the time of the city tax sale.

The defendant pleaded the prescription of three years.

This suit was filed June 16, 1925, and service of citation accepted same day. The actual tax sale was made to the Tulane Investment Company on June 15, 1922, but was registered only on July 12, 1922.

Therefore this suit was filed and service accepted less than three years prior

to the "recordation of the tax deed." The prescription of three years does not run from the date of the tax sale but "from the date of the recordation of the tax deed."

See Sec. 11, Art. 10, p. 86, of the Constitution of 1921. Byrne vs. Commercial Security Co., 7 La. App. 667.

The plea of prescription cannot therefore prevail.

Further answering the defendants plead that plaintiff is estopped from attacking the sale made by the City on July 18, 1922, for the city taxes of 1921 for the reason that the plaintiff stood by and permitted the City to sell the property.

There is nothing to show that the plaintiff had knowledge of the intention of the City to sell the property or that he was present at the sale. The authorities quoted by the defendants in support of their proposition are not in point.

The defendants further plead that the failure of the plaintiff to pay all taxes due on the property at the date of their acquisition left him without any title. They rely upon ten cases. But all of them are applications of the Acts 96 of 1882 and 82 of 1884 commonly known as the "Iron Clad" Acts, which created special legislation. West vs. Negrotto, 52 La. Ann. 381, 27 So. 75; Lyons vs. Fitzpatrick, 52 La. Ann. 700, 27 So. 110; Martinez vs. State Tax Collectors, 42 La. Ann. 677, 7 So. 796; Acts 85 of 1888, and the acts amendatory thereof, including Act 170 of 1898 under which the State tax sale to the plaintiff was made, did not require him to pay all taxes due as a condition precedent to the validity of his tax title.

The copy of what should have been the notice of sale to "Rev. Timothy P. Norris" bears upon its face the return "Service."

This return is corroborated by testimony that Norris no longer lived in New Orleans but had removed to Bastrop.

Sec. 11 of Article X of the Constitution provides that the tax collector shall give notice "to the delinquent in the manner provided by law."

A tax sale without notice to the owner is null. 7 La. Dig. p. 121, S. 281; Kivlen vs. Horvarth, 163 La. 901, 113 So. 140.

The defendant recovered judgment for the City and State taxes paid by them, and for the cost of the act of sale and copy thereof, aggregating $29.37 with ten per cent per annum interest from the payment thereof. They claimed, besides, the cost of alleged fences put up by them around the lot, and $2.50 for State and City tax research certificates and $25 for a survey to locate the lot.

The last three items were not legally due.

The amount spent by defendants to erect the fence around the lot was not allowed, for reasons which do not appear in the record.

It has been decided that a party who has purchased a lot of ground at a tax sale and is afterwards evicted on account of irregularity in the proceedings, is entitled to recover the value of the improvements made by him. Gornon vs. Handlin, 19 La. Ann. 25; C. C. 508 (500); C. C. 3453 (3416); Williams, Pinckard & Co. vs. Aroni, 35 La. Ann. 1119; Hickman vs. Dawson, 35 La. Ann. 1086; Eldridge vs. Tibbitts, 5 La. Ann. 380; Barrow vs. Wilson, 39 La. Ann. 410, 2 So. 809; Wederstrandt vs. Tereyhan, 34 La. Ann. 705; Walsh vs. Harang, 48 La. Ann. 992, 20 So. 202; Genella vs. Vincent, 50 La. Ann. 967, 24 So. 690.

V. P. Breaux, the president of the Galvez Realty Company, testified that his company paid one Hallick $82.62 for fence boards and $25.60 for fence posts, and $61.20 for labor for digging holes and putting up the fence around the lot, making a total of $169.42. Silas Dozier says he worked to put up the fence around the Norris lot, Mr. Halleck paid him.

S. Horvath is in the real estate and building business and buys and sells lumber and is qualified to give prices on lumber; three or four months ago he examined the fence around the Norris lot; he found 1454 feet of fence boards 1x12 worth $45 per thousand, and fence posts 4x6, 640 feet worth $40.

The lot is 30x120, or 300 feet around. At 60 cents a running foot the fence would cost $180 or about the price charged by defendants. The amount seems reasonable.

The plaintiff testified that he did not build a fence around the lot.

James Stewart, a witness for plaintiff, testified that he built a fence around two lots on Andry Street by mistake; the lumber cost him $104.50; attorney for the defendant showed him he was in the wrong square.

The plaintiff contends that "the evidence establishes that the property was fenced in at the time of its purchase by the appellants (defendants at tax sale, and that they tore down this fence and used the same lumber to erect another fence."

We have failed to see any evidence to that effect. The only testimony that tends to cast any shadow on the question is that of Stewart, who testified that he had fenced in two lots in another square which were not his, and that when he was made aware of his error the agents of the Galvez Realty Company would not permit him to remove his lumber, and that he was told that the Galvez Company had hauled it away, though he does not know it.

There is nothing in the record to show that the Norris lot before us was fenced in when defendants bought it. The only doubt that Stewarts' testimony creates is that the defendants appropriated his fence to build their own. But even then the fact would remain that defendants had put up this fence which plaintiff cannot keep without paying for it. Stewart might have a claim against the defendants for the value of the lumber, but that would not entitle the plaintiff to take it without paying for it; one fact is clear and that is that plaintiff did not put up the fence and he cannot enrich himself at the expense of another. 2 H. D. 1195; Genella vs. Vincent, 50 La. Ann. 967, 24 So. 690.

We are therefore of the opinion that the plaintiff must pay the defendants for the fence erected by them.

Section 11 of Article X, p. 86, of the Constitution, provides: "that no judgment annulling a tax sale shall have effect until the price and all taxes and costs paid with ten per cent per annum interest on the amount of the price and taxes paid from date of respective payments be previously paid to the purchaser."

The same provision applies to the value of the improvements to which the defendants may be entitled; Article C. C. 3453 (3416), reads as follows:

"The rights which are peculiar to the possessor in good faith are:
"1st. * * * 2nd. The right which such a possessor has in case of eviction from the thing reclaimed to retain it until he is reimbursed the expenses he may have incurred on it."

Delouche vs. Rosenthal, 143 La. 587, 78 So. 970; 2 H. D. 1198 (c); Stanbrough vs. Wilson, 13 La. Ann. 494; Coleman vs. Heirs of Ballard, 13 La. Ann. 512.

It is therefore ordered that the judgment appealed from be amended by increasing the amount the plaintiff Samuel V. Edmiston shall pay to the defendants, the Galvez Realty Co., Inc., from twenty-nine and 37-100 dollars to one hundred ninety-eight and 79-100 dollars with five per cent per annum interest on one hundred sixty-nine and 42-100 dollars from October 29, 1925, until paid, and that this judgment shall not be executed as to the plaintiff Samuel V. Edmiston until he shall have paid to the Galvez Realty Company the aforesaid sum of one hundred ninety-eight and 79-100 dollars with interest and costs hereinabove mentioned.

Judgment amended and affirmed.